Ramsey *v.* McGregor et al.

---

Wm. M. Ramsey, Adm'r *de bonis non* of Robert McLean, *v.* James McGregor et al., Adm'rs of Robert McGregor.

Action against A., as administrator. A. pleaded the statute of limitations, and that the matter had finally been disposed of in the probate court, and no appeal taken.

Also, that he had deposited the trust fund with E. & M., bankers in good standing, to the credit of the estate, and that by their failure, without any negligence of his, the loss occurred.

*Held:* 1. That unless irregularity was shown, the proceedings in the probate court were a complete bar.

2. That an administrator acting in good faith is not responsible for loss incurred by the failure of a bank of good credit, wherein he had deposited the funds of the estate, to the credit of the estate, and did not mingle them with his own.

This action is brought to recover of the defendants a large sum of money, which it is alleged was in the hands of their

intestate, at the time of his death, belonging to the estate of Robert McLean, of whom Robert McGregor had been the administrator. The plaintiff charges the amount thus unadministered by McGregor to be, with interest, $10,796. McGregor died in August, 1866, having previously, in May, 1863, resigned his administratorship, and the plaintiff was appointed by the probate court to act in his stead. In 1865, McGregor paid over to the plaintiff $2.800, on account of McLean's estate, leaving the balance now demanded still in his hands. After his death, in September, 1866, the defendants took out letters of administration on his estate, and the plaintiff presented the claim of his intestate against McGregor for allowance by the defendants, which was refused. The present action was begun by the filing of the petition, December 8, 1870.

The defendants set up four grounds of defense:

1. That the action against them was not commenced within four years, as required by the act of November 1, 1840, section 101, S. & C. 585.

2. That the whole matters involved in the suit were passed upon, decided, and finally disposed of in the probate court of Hamilton county, in the progress of the settlement of the estate of Robert McLean, on the application of his then administrator, Robert McGregor, and that no exception or appeal has been taken to the judgment of said court, but the same remains unreversed.

3. That the defendants' intestate was appointed administrator of McLean in 1854; that within five months thereafter he had reduced the property, which came into his hands for administration, to cash, the entire proceeds being $8,367.15, and without waiting for the period allowed by law to distribute the assets in his hands, he called the creditors of McLean together and proposed to make a division of the money in his hands, if they would indemnify him against any creditors who might afterward present their claims. This proposition was rejected, and McGregor then deposited the amount in his hands with Ellis & Morton, who,

Ramsey v. McGregor et al.

at that time, were bankers in good credit, and enjoyed public confidence. This deposit was made in his name as administrator.

That the depositaries afterward unexpectedly failed and made an assignment of the effects, from which the defendants' intestate received the amount which was paid to the plaintiff in 1863. This deposit was kept in the name of the administrator, and was never used by him for his private purposes, gain, or profit, and was made in good faith, with the same bankers with whom McLean, in his lifetime, had transacted business and kept his bank account.

4. A general denial of indebtedness.

The plaintiff demurred generally to the whole answer, and the cause was reserved to General Term.

*H. Snow* and *Matthews & Ramsey,* for plaintiff.

*Noyes & Taft,* contra.

STORER, J. There is no denial of the first defense, nor any replication setting up the legal exceptions that might save the statutory bar, if pleaded and proved; but, on the contrary, the demurrer admits the facts pleaded, and we are bound to regard it as a full answer to the action, if the proceedings referred to were had in the mode required by the statute of February 7, 1856, sec. 36, 2 S. & C. 1218. This section was an amendment of the law of May 1, 1854, which authorized appeals to be taken from any order of the probate court in settling the accounts of executors and administrators, and prescribed the mode of proceeding to effect that object; but under the old practice no such privilege was allowed. Whenever an order was made or a settlement had within the court of common pleas under the law relating to insolvent estates, the act of that tribunal was regarded as a final adjudication, and could not be impeached except by a bill in equity, and although that remedy can not now be resorted to. we must adopt the same rule in giving effect to

the orders of the probate court, while they remain in force. *Negley* v. *Gard*, 20 Ohio, 310.

The third ground of defense presents directly the question, did the administrator of McLean neglect his duty in depositing the assets which came into his hands with Ellis & Morton, after the creditors had declined to receive their dividends before the administrator was bound to declare them, provided he should be indemnified against subsequent claims? This involves a simple question of legal duty on the part of the trustee.

The liabilities of executors and administrators are those that grow out of and are necessarily attached to the fiduci · ary relation they have assumed. Good faith and the care that any prudent man would exercise in the management of his own affairs are essential to the just performance of their duties. They can not be excused for neglect of what is plainly for the interest of the trust confided to them, nor for the want of foresight to avail themselves of every opportunity to make profitable the fund over which they have the control. They can not, therefore, use it for their private purposes or advantage, and they may be compelled to account for any profit they may have made from employing it. They can not, with any propriety, become the depositaries of money belonging to the trust, nor mingle it with their own; nor may they place the sum in bank to their own account, and avoid thereby the possible loss of the deposit by the failure of the depositary.

This statement of the duties of the trustee is but the result of the established rule, both at law and equity, where his conduct is questioned, and practically results in the inquiry, has the trustee acted in the discharge of his duties as he ought to have done in the management of his own business?

We need not refer to cases that recognize the rules we have suggested, as it would be useless labor. If we find the principle is established, we are not required to quote a long list of authorities to sustain it. We may only refer to

2 Williams on Executors and Administrators, 1647; 2 Story's Equity, sec. 1272; Tiffany & Bullard on Trusts, 481, 482, who recognize the rule we have stated to its fullest extent, and have quoted the English and American authorities to sustain it.

We find, then, as the demurrer admits, the facts stated in the answer, that there is no just charge of omission of duty or legal delinquency in the conduct of McGregor. There is no ground to infer that the depositaries of the fund were not such that a prudent, cautious, and just man would not have confided to their charge his own funds, and the loss can not, therefore, be imputed to McLean's administrator. With these views, we must overrule the demurrer to each of the causes of defense, with leave to the plaintiff to amend his pleadings and reply should he so decide to do.